### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| **JOHN NORMAN CASEY, and** | ) | |
| **CAROL CASEY,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | **No. 3:03-CV-00545** |
| | ) | |
| **PHELAN INSURANCE AGENCY, INC.,** | ) | |
| **ALAN DAVIS INSURANCE AGENCY,** | ) | |
| **INC., and TRUCK INSURANCE** | ) | |
| **EXCHANGE,** | ) | |
| | ) | |
| **Defendants** | ) | |

### *MEMORANDUM, OPINION, AND ORDER*

This matter is before the Court on Defendants', Truck Insurance Exchange

("Truck") and Alan Davis Insurance Agency, Inc. ("Alan Davis"), Motion for Summary

Judgment (Docket No. 45) and Defendant's, Phelan Insurance Agency, Inc. ("Phelan"),

First Motion for Summary Judgment (Docket No. 50).  This matter is also before the

Court on Defendant Phelan's Rule 56 Motion to Strike Appendix, Exhibit "G" (Docket

No. 60).  Although the docket sheet in this case indicates that the jurisdictional basis here

is federal question jurisdiction, the papers in the case might indicate otherwise.  This

Court has jurisdiction under 28 U.S.C. §1332, invoking Indiana law with regard to issues

surrounding an automobile accident and insurance coverage.  This Court held oral

argument on these issues on April 26, 2006 in South Bend, Indiana, and the parties have

fully briefed the relevant issues.

For the reasons discussed below, Defendant Phelan's Rule 56 Motion to Strike Appendix, Exhibit "G" (Docket No. 60) is **GRANTED**.  Defendants Truck and Alan Davis's  Motion for Summary Judgment (Docket No. 45) and Defendant Phelan's First Motion for Summary Judgment (Docket No. 50) are also **GRANTED**.

## I.  Procedural History and Factual Background

The factual setting of this case is fairly simple and straightforward.  In 1999, at the time necessary to renew his company's liability insurance, Herman Joe Rex ("Rex"), President of Rex Transportation, Inc. ("Rex Transportation"), received a letter from Phelan offering to quote insurance policies.  Rex Dep. at 8:13 - 9:8.  Alan Davis worked with Phelan in providing these quotes.[1]  *Id.* at 47:23 - 48:21.  On November 5, 1999 Rex met with Mick McClurg, from Phelan, to discuss potential liability insurance.  At that meeting, Rex asked McClurg what uninsured/underinsured motorist ("UM/UMI") limits his competitors carried and, based on that information and his prior policy with the Gibson Agency ("Gibson"), requested that the UM/UMI coverage on his policy be set at $50,000.  Rex testified that he knew higher limits of UM/UMI coverage were available. *Id.* at 16:22 - 17:1.

Rex subsequently received an insurance quote from Truck through Alan Davis and

---

[1]Neither Rex nor Rex Transportation had any relationship with Phelan, Alan Davis, or Truck prior to September 1999.  Defendants Truck and Alan Davis's Brief in Support at 3.

Phelan. Thereafter, Phelan issued a motor vehicle liability policy to Rex.[2] This policy was renewed under the same terms as for the initial period and extended, covering the period through November 7, 2001. Throughout the entire period of coverage, Rex paid all premiums owing. Ultimately, Rex purchased liability insurance from Truck Insurance Exchange ("Truck") for injuries to third parties in the amount of one million dollars. This policy also provided uninsured/underinsured coverage in the amount of fifty thousand dollars.

In the early morning hours of August 11, 2001, the Plaintiff, John Norman Casey ("Casey"), was driving a 1997 International semi-tractor trailer rig owned by his employer, Rex Transportation, Inc. Casey was traveling in a northbound direction on US 421 in Boone County, Indiana at the same time that Douglas P. Scott ("Scott"), now deceased, operated a Chevrolet pickup in an eastbound direction on State Road 47, approaching its intersection with U.S. Highway 421. A stop sign required the vehicles on State Road 47 to stop at its intersection with U.S. Highway 421. According to the papers in this case, Scott failed to stop or yield the right of way, causing a collision with Casey. The collision caused the tractor trailer operated by Casey to turn on its side and ignite. As a result, Casey suffered permanent, severe injuries. He claimed special damages in excess of one hundred thousand dollars.

On October 17, 2002, Scott's insurance carrier paid its policy maximum,

---

[2]While the meeting occurred on November 5, 1999, the two waiver forms were dated November 7, 1999 and November 9, 1999.

3

$100,000,[3] to Casey, but the payment was insufficient to cover his medical expenses.  As a result, the Casey's brought this action against Rex Transportation's liability insurer and its agents (collectively referred to as "Defendants") for breach of contract for failure to pay underinsured motorist benefits, negligent failure to procure insurance, and negligent failure to provide insurance advice.

## II.  Motion to Strike Analysis

Before the Court can rule on Defendants' Motions for Summary Judgment, it must address Defendant Phelan's Rule 56 Motion to Strike Appendix, Exhibit "G."  On January 6, 2006, Defendant Phelan filed its Motion to Strike, pursuant to N.D. Ind. L.R. 7.1 and 56.1(d).  Specifically, Phelan requested that this Court strike Appendix, Exhibit "G" of Plaintiffs' designation of materials, which was filed in conjunction with Plaintiffs' Response to Defendants' Motions For Summary Judgment (Docket Nos. 56 and 57).  Phelan asserts that the promotional flyer contained within Exhibit "G" and Plaintiffs' references to it throughout their supporting argument are inadmissible because the flyer is unauthenticated.  On January 17, 2006, the Plaintiffs filed their Response (Docket No. 63) in objection to Defendant's Motion to Strike.

In determining whether to grant a motion for summary judgment, the court may consider evidence beyond the pleadings, but may only consider evidence which would be otherwise admissible at trial. *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2000);

---

[3]This amount was the liability limit on Mr. Scott's policy for physical injury or death to any one person.

4

*See also Whitted v. General Motors Corp.*, 58 F.3d 1200, 1204 (7th Cir. 1995); *Oriental Health Spa v. City of Fort Wayne*, 864 F2d 486, 490 (7th Cir. 1988).  When evidence is offered through exhibits on a summary judgment motion, those exhibits "must be identified by affidavit or otherwise be admissible."  *Powers v. Dole*, 782 F.2d 689, 696 (7th Cir. 1986). In *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, the Court stated, the "evidence need not be admissible in form (for example, affidavits are normally not admissible at trial), but it must be admissible in content."  301 F.3d 610, 613 (7th Cir. 2002); *See Winskunas v. Birnbaum*, 23 F.3d 1264, 1267-68 (7th Cir. 1994).

Before evidence may be admitted, it must be authenticated.  Federal Rule of Evidence 901(a) states, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  In *United States v. Brown*, the 7th Circuit stated, "[a]uthentication relates only to whether the documents originate from [their alleged source]; it is not synonymous to vouching for the accuracy of the information contained in those records.  688 F.2d 1112, 1116 (7th Cir. 1982); *See Hood v. Dryvit Systems, Inc.*, No. 04-CV-3141, 2005 WL 3005612, *3 (7th Cir. Nov. 8, 2005).

Here, Phelan asserts that the promotional flyer presented in Exhibit "G" should be stricken because it is unauthenticated.  This exhibit was originally introduced as Exhibit 9 to the Mick McClurg deposition.  According to Phelan, McClurg identified the flyer as a Phelan Insurance Agency brochure, but "denied that it was currently in use and he stated

5

that he did not know whether it was in circulation in 1999." Motion to Strike at 2; citing McClurg Dep. at 56:6-11; 56:12-19. Phelan further argues that McClurg "testified that Phelan has used several brochures but he did not know the time period that any particular version was in circulation." *Id.*; *citing* McClurg Dep. at 12:23-14:6. Accordingly, Phelan argues that since there is no date or copyright on the brochure and no testimony demonstrating that the flyer was in use in 1999, there is nothing to indicate its production and circulation dates. Phelan also argues that there is no evidence to support Plaintiffs' contention that "Rex read the brochure prior to meeting Mick McClurg and Alan Davis or that he relied upon any representations made in the brochure." *Id*. Therefore, Phelan asserts that the Plaintiffs cannot represent Exhibit "G" as a 1999 brochure and that the brochure fails to meet the requirements of F.R.E. 901(a).

Plaintiffs contend that Exhibit "G" "represents a description from Defendant Phelan of continuing business practices which were in place at the time Herman Rex purchased insurance from Phelan Insurance Agency." Plaintiff's Response to Motion to Strike at 1. In their Response, Plaintiffs acknowledge that McClurg was not certain as to whether the flyer was in circulation as early as 1999. *Id*. Plaintiffs contend, however, that this fact does not preclude admissibility under F.R.E. 901(a).

Plaintiffs also argue that Exhibit "G" represents the business practices of Phelan. Plaintiffs seek to use quotes pulled from Exhibit "G" in order to demonstrate that Phelan held itself out to be an expert in the insurance field. Plaintiffs assert that even though

6

McClurg testified that he was unsure of whether that particular flyer was in circulation as early as 1999, he also testified that the "business practices of Phelan Insurance agency have not changed in any material way since that time." *Id*.; citing McClurg Dep. at 58. Thus, Plaintiffs' main argument is that since the business practices at Phelan had not changed since 1999, "[a]n inference can be made that the flyers would be essentially the same too." *Id*. at 2. Plaintiffs assert that they "should not be penalized because Defendant Phelan cannot remember the time of the flyer in the deposition or provide the appropriate flyer through the discovery process." *Id*.

This Court has reviewed the arguments presented in Phelan's Motion to Strike, as well as Plaintiffs' Response to the Motion to Strike, in light of the appropriate standards of admissibility. For Exhibit "G" to be admissible, there must be sufficient evidence before the Court to "support a finding that the matter in question is what its proponent claims." F.R.E. 901. Given the lack of any evidence to show the production and circulation dates of the brochure, this Court finds that Exhibit "G" fails to meet the standards required for authentication and admissibility under F.R.E. 901(a). Thus, the Defendants' Motion to Strike is **GRANTED**.

### III. Summary Judgment Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

7

as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986);

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986)*; Bragg v. Navistar Int'l Trans.*

*Corp*., 164 F.3d 373 (7th Cir. 1998); *Marshall v. Universal Underwriters Ins*., 673 N.E.2d

513, 515 (Ind. App. 1996); *Western Reserve Mut. Cas. Co. v. Holland*, 666 N.E.2d 966

(Ind.Ct.App. 1996).  After affording the parties adequate time for discovery, a court must

grant summary judgment against a party "who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, on which that party will

bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

The initial burden is on the moving party to demonstrate, "with or without

supporting affidavits," the absence of a genuine issue of material fact and that judgment

as a matter of law should be granted in the moving party's favor.  *Celotex*, 477 U.S. at

324 (quoting FED. R. CIV. P. 56); *Larimer v. Dayton Hudson Corp*., 137 F.3d 497 (7th Cir.

1998), *reh'g denied*.  A question of material fact is a question which will be outcome-

determinative of an issue in the case.  The Supreme Court has instructed that the facts

material in a specific case shall be determined by the substantive law controlling the

given case or issue.  *Anderson*, 477 U.S. at 248.  The moving party may discharge this

initial burden by demonstrating that there is insufficient evidence to support the non-

moving party's case.  *Celotex*, 477 U.S. at 325.  The moving party may also choose to

support its motion for summary judgment with affidavits and other admissible material,

thereby shifting the burden to the nonmoving party to demonstrate that an issue of

material fact exists.  *Steen,* 2006 WL 335521 at *1 (7th Cir. Feb. 13, 2006); *See Kaszuk v.*

8

*Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977). The nonmoving party cannot rest on its pleadings, *Weicherding v. Riefel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994); nor may that party rely upon conclusory allegations in affidavits. *Smith v. Shawnee Library* Sys., 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Bombard v. Fort Wayne Newspapers, Inc*., 92 F.3d 560 (7th Cir. 1996). However, the plaintiff must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita*, 475 U.S. at 577; 106 S. Ct. at 1351. Rather, he must come forward with "specific facts" showing that there is a genuine issue for trial. *Id.* at 587 (*quoting* FED. R. CIV. P. 56(e)). Furthermore, the court is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252-55. In other words, a party's evidence must be "competent evidence of a type otherwise admissible at trial." *Steen,* 2006 WL 335521, at *2; *quoting Bombard*, 92 F.3d at 562.

## IV. Discussion

Applying the above standard, this Court addresses the Defendants' respective Motions for Summary Judgment in conjunction with each other. The issues are as

follows: (1) whether Casey was a third party beneficiary to the contract between Rex and Defendants; (2)whether the Defendants complied with Indiana's uninsured/underinsured motorist statute ("UM/UMI"), IC § 27-7-5-2, by offering uninsured/underinsured motorist coverage limits in amounts equal to his bodily injury coverage limits; (3) whether Rex validly waived that coverage by selecting UM/UMI coverage in an amount less than his bodily injury liability limits; and (4) whether a special relationship existed between Rex and the Defendants giving rise to a duty to advise.  These issues will each be addressed in turn.

## A.  Third Party Beneficiary Relationship

Casey claims that he was a third party beneficiary to the contract between Rex and Phelan.  In order to qualify as a third party beneficiary, Casey must show:  "(1) that the parties intend to benefit a third party; (2) that the contract imposes a duty on one of the parties in favor of the third party; and (3) that the performance of the terms of the contract renders a direct benefit to the third party.'" *Midwestern Indemnity Co. v. Systems Builders, Inc.*, 801 N.E.2d 661, 670 (Ind. App. 2004); *quoting Miller v. Partridge*, 734 N.E.2d 1061 (Ind. Ct. App. 200), *trans denied.  See also Harvey v. Lowry*, 204 Ind. 93; 183 N.E. 309 (1932).

This court has taken the trouble to look carefully at that concept, as it might aid these Plaintiffs.  What is found, however, does not appear to be helpful in this regard.  In classic common law terms, the Caseys simply do not fit as third party beneficiaries in regard to the contractual arrangements between these Defendants and Rex.  With all

10

deference, the effort of these Plaintiffs to benefit from the third party beneficiary concept is a stretch. Certainly, it has to be understood that there are some hard edges in this factual setting.

Rex stated that his intent in obtaining insurance from Phelan was to operate legally at the least expense. His intent was to protect Rex Trucking's own liability, while at the same time maintaining low premium payments. As harsh as it might seem, he did not breach any established duty to John and Carol Casey in his actions here. Therefore, this Court finds that the Caseys were not third party beneficiaries to the contract between Rex and Defendants. It is not the province of this Court, sitting in diversity jurisdiction and interpreting Indiana law, to re-write a contract when the written version of the contract is reasonably clear on its face. To put it bluntly, the Caseys did not have the independent right to request more coverage than Rex wanted. It is the intent of the purchaser of the policy, which in this case is very clear, that counts. Obviously, the record in this case literally cries out for sympathy. This Court is understandably reluctant to apply the kind of conclusive presumption as the Court of Appeals did in *Holtz v. JJB Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 742 (7th Cir. 1999).

Although in a slightly different setting, the opinion in *Bean v. Wausau Ins. Co.*, 765 N.E. 2d 524 (Ind. 2002) provides an insightful interpretation of the very statute critically important in this case. There is some real question here as to whether these plaintiffs are entitled to the benefit of the special rules of construction of insurance contracts in which ambiguities in the same are strictly construed against the insurer and in

favor of the insured.  *See Indiana Lumberman's Mutual Ins. Co. v. Statesman*, 291 N.E.

2d 897 (Ind. 1973).  Justice Boehm discusses that concept at some length in *Bean*.  The

reasoning and result of Justice Boehm in *Bean*, 765 N.E. 2d at page 533 where there is

specific discussion of the meaning of Indiana Code 27-7-5-2, does not aid these plaintiffs

here.  The argument here is that Mr. Rex did exactly what the statute in Indiana permits,

and there has been substantial compliance with the relevant provision of the Indiana

statute.  It is correct that the result here is supported by out-of-state interpretations of

similar statutory provisions.  *See Vasquez v. Bakers Insurance Co.*, 502 So.2d 894, 896

(Fla. 1987).  Under the law of Indiana relevant to the time in question, Mr. Rex had no

additional duty to secure coverages that might cover Mr. Casey in this very unfortunate

event.  Mr. Rex did not breach that duty, but exercised an option he clearly had under a

statute of the State of Indiana.

### B.  Defendants' Compliance with Indiana's UM/UMI Statute

Even if a third party beneficiary relationship existed between Casey and the

Defendants, the duty to procure was not breached.  Indiana's uninsured/underinsured

motorist statute ("UM/UMI"), IC § 27-7-5-2,[4] "requires insurance companies to offer

UM/UMI coverage in each automobile or motor vehicle liability policy, but the insured

has the right to reject such coverage."  *Employers Ins. of Wausau v. Stopher*, 155 F.3d

_____

[4]For ease of reference, the entirety of that statute is placed in Appendix "A" which is
basically a compilation of statutes on the subject in Indiana up to 1999.  Although it is not
specifically argued here, in order to round out the subject, a more recent statute apparently
enacted in 2005 is fully set out and attached hereto as Appendix "B."

12

892, 894 (7th Cir. 1998); *citing* Ind. Code § 27-7-5-2 (1993 & Supp.1994).    In pertinent

part, IC § 27-7-5-2 provides:

> (b) The named insured of an automobile or motor vehicle liability policy
> has the right, in writing, to:
>> (1) reject both the uninsured motorist coverage and the
>> underinsured motorist coverage provided for in this section;
>> or
>> (2) reject either the uninsured motorist coverage alone or the
>> underinsured motorist coverage alone, if the insurer provides
>> the coverage not rejected separately from the coverage
>> rejected.

Ind. Code § 27-7-5-2.  *See also Stopher*, 155 F.3d at 894.

The purpose of this statute is "'to put the injured party in the place they would

have been if the other person had complied with the financial responsibility law.'  Thus, if

the injured party is compensated for his loss to the extent that he would have been had the

other party carried sufficient insurance, the goal of § 27-7-5-2 has been satisfied."

*Stopher*, 155 F.3d at 899 (quoting *City of Gary v. Allstate Ins. Co.*, 612 N.E.2d 115, 117

(Ind. 1993)).  This statute is to be liberally construed and read in the light most favorable

to the insured.  *State Farm Mut. Auto. Ins. Co. v. Stuery*, 787 N.E.2d 465, 470 (Ind. App.

2003); *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 459-460 (Ind. 1999).  The

Indiana Court of Appeals held that the phrase "must be provided by insurers . . . unless"

requires "insurers to offer an UM/UMI coverage plan in limits equal to the limits of

liability specified in the bodily injury liability provisions."  *Marshall v. Universal

Underwriters Insurance Co.*, 673 N.E.2d 513, 516 (Ind.App. 1996), *reh'g denied* Jan. 16,

1997.

13

Under the plain and ordinary meaning of IC § 27-7-5-2, Defendants were allowed to provide Rex with an underinsured motorist coverage plan that provided for limits which were less than the bodily injury limits specified in his policy so long as he was *offered* equal limits.  *See Marshall*, 673 N.E.2d at 517 (holding that the "UM/UMI statute permits underinsured motorist coverage limits which are less than the limits for bodily injury specified in a policy.").  In other words, Indiana Code 27-7-5-2 permitted Rex to minimize his insurance premium expense by contracting for an insurance policy with uninsured/underinsured motorist coverage of fifty thousand dollars even though his liability limits were higher.  Rex signed two separate forms acknowledging the offer and rejection of limits equal to liability limits and the selection of fifty thousand dollars of uninsured and underinsured coverage.  He testified in his deposition that his motivation was to obtain the coverage required by law for Rex Transportation to maintain its operating permit, while at the same time cutting down on insurance premium expense in his business.  Rex Dep. at 9:19 - 10:11; 12:24 - 13:10.  Those basic facts are not disputed.[5]  As such, there is no doubt that the relevant statutes of the State of Indiana have been followed by Defendants and that the Defendants have not breached any duty to procure insurance.  The task here becomes one of determining whether the waiver is valid.

---

[5]Although there is a doctrine in Indiana with regard to fraud in the inception of a contract which can also include an insurance contract, that argument is not here advanced by the able lawyers representing Mr. and Mrs. Casey.  *See Park 100 Investors, Inc. v. Kartes*, 650 N.E.2d 347 (Ind. App. 1995).

## C.  Rex's Waiver of UM/UMI Coverage

Next, this Court must consider whether Rex validly waived the higher UM/UMI

coverage. The plain and ordinary language of the statute establishes that the "insurer must

affirmatively indicate in writing, rather than by spoken communication, that it is his or her

choice to not accept UM/UMI coverage."  *Marshall*, 673 N.E.2d at 516.  In *DePrizio*, the

Court held that "[e]ven where a given policy fails to provide such uninsured motorist

coverage, the insured is entitled to its benefits unless expressly waived in the manner

provided by law." 705 N.E.2d 455, 459-60. Additionally, that waiver must be voluntary.

*Id*.  Indiana courts have consistently held that "an insured need only sign a written form to

validly reject such coverage."  *Stopher*, 155 F.3d at 898.  *See Marshall*, 673 N.E.2d at 51;

*Zurich-American Insurance Group v. Wynkoop*, 746 N.E.2d 985, 989 (Ind. App. 2001).

When reviewing a contract for insurance, the ordinary rules of construction apply.

*Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243-44 (Ind. 2000).  Indiana courts have

held that "where there is ambiguity, insurance policies are to be construed strictly against

the insurer and the policy language is viewed from the standpoint of the insured.*"*

*Wynkoop*, 746 N.E.2d at 988.  *See also Bosecker,* 724 N.E.2d at 243-44; *Am. States Ins.*

*Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996), *reh'g denied*.  In *Stopher*, the 7th Circuit

stated, "Indiana law requires that the unambiguous language of an insurance policy be

given its plain and ordinary meaning.  However, if the language is susceptible to more

than one reasonable interpretation, the court construes the language in the light most

favorable to the insured."  155 F.3d at 897; *citing Huntzinger*, 143 F.3d at 309.  (internal

citations omitted).

The Plaintiffs contend that IC § 27-7-5-2 requires *each* named insured to reject UM/UMI coverage in writing.  However, IC § 27-7-5-2 "simply provides that such coverage must be rejected in writing by 'the named insured.'"  *Stopher*, 155 F.3d at 894.  The Plaintiffs also contend that the first form signed by Rex was ambiguous in that the first form was entitled "Uninsured Motorist Coverage" and made no express or specific reference to "underinsured coverage."  Plaintiff's Response at 6.

The insurance policy issued by Phelan offered Rex the option to choose uninsured/underinsured coverage with limits equal to his chosen bodily injury liability limits.  While the first form, "Uninsured Motorist Coverage," did not contain the phrase "underinsured motorist coverage," that coverage was discussed–and waived by Rex–in the following paragraph contained on that form:

> Uninsured motorist protection will pay for damages that you, the insured, are legally entitled to recover as a result of injuries caused by a driver who has no Bodily Injury Liability coverage, *or* by a driver who has *Bodily Injury Liability limits which are less than your uninsured motorist coverage limits*.

Uninsured Motorist Coverage form (emphasis added).  Additionally, Rex signed a second form, entitled "Indiana Rejection of Uninsured Motorist/Underinsured Motorist Bodily Injury and Property Damage Coverage."  That form recited IC § 27-7-5-2.  On that document, the line next to the following paragraph was hand-marked with an "X":

> ___X___ agrees that the lower limit indicated on the Declarations page applies with respect to Uninsured/Underinsured Motorist Coverage afforded in the policy.

On that form, the box next to 2(b) was hand-marked and the figure "$50,000" was written in.[6]  Rex signed this form, requesting only $50,000 in UM/UMI coverage, and the form was dated November 9, 1999.  Rex Dep. at 50:22-25; 51:1-7.

Those written documents substantially complied with the recently enacted statutory law of Indiana and any relevant Indiana judicial interpretation of the statutes in question.  Rex sought uninsured/underinsured coverage limits which complied with the minimum limits required by law and in an amount similar to that procured by his competitors.  He chose uninsured/underinsured coverage limits in an amount less than his bodily injury liability limits and waived his right to equal limits in two written documents.  Rex testified that he believed uninsured/underinsured motorist coverage was self-explanatory.  Rex Dep. at 22:4-15.  Therefore, even when viewing the forms and facts in the light most favorable to the insured (Rex), it is clear that a valid waiver was effectuated.

### D.  Duty to Advise

This Court now considers Plaintiffs' claim that Phelan breached a fiduciary duty owed to Rex arising out of a negligent failure to advise.   Plaintiffs contend that the Defendants breached their fiduciary duty by failing to advise Rex not to reject the higher uninsured and under-insured limits.  *See United Farm Bureau Mut. Ins. Co. v. Cook*, 463 N.E. 2d 522 (Ind. App. 1984).  *See also DeHayes Group v. Pretzels, Inc.*, 786 N.E. 2d 779 (Ind. App. 2003).  In *American Family Mut. Ins. v. Dye*, 634 N.E.2d 844, 847 (Ind.

---

[6]Line 2(b) read: "Because my policy has combined single limits, I accept Underinsured Motorist Coverage limits of $50,000."

17

App. 1 Dist. 1994), the court stated, "[a]n insurance agent who undertakes to procure insurance for another is an agent of the insured and owes the insured a general duty to exercise reasonable care, skill and good faith diligence in obtaining insurance." *Id*.; *citing Craven v. State Farm Mutual Automobile Insurance Co.*, 588 N.E.2d 1294, 1296 (Ind. App. 1992). The duty to procure, however, extends to the "provision of advice 'only upon a showing of an intimate long term relationship between the parties or some other special circumstance.'" *Id*.; *quoting Craven*, 588 N.E.2d at 1297.

In *Craven*, the court set forth relevant factors to be considered in determining whether a special relationship exists to trigger the duty[7] to advise. Those factors manifesting a special relationship include: "(1) exercising broad discretion to service the insured's needs; (2) counseling the insured concerning specialized insurance coverage; (3) holding oneself out as a highly-skilled insurance expert, coupled with the insured's reliance upon the expertise; and (4) receiving compensation, above the customary premium paid, for the expert advise provided." *Craven*, 588 N.E.2d at 570. *See also Pretzels*, 786 N.E.2d at 782. The insured bears the burden to show that an intimate, long-term relationship between the parties or some other special circumstance exists. *Dye*, 634 N.E.2d at 848; *Parker v. State Farm*, 630 N.E.2d 567, 569 (Ind. App. 2 Dist. 1994).

Here, it is undisputed that Phelan successfully obtained insurance–in the amount

---

[7]The existence of this duty is a question of law for the court, which depends, in part, upon the nature of the relationship between the parties. *Wyrick v. Hartfield*, 654 N.E.2d 913, 914-15 (Ind. App. 1995); *American Family Mut. Ins. v. Dye*, 634 N.E.2d 844, 848 (Ind. App. 1 Dist. 1994); *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991).

requested–for Rex.   Rex asked Phelan, an insurance broker, to obtain a quote for the

purchase of a particular type of insurance coverage.  The Defendant obtained the quote

requested, and Rex made the purchase.  This was the first contact that Rex had with the

Defendants.  It is clear from the record in this case that Rex and Defendants did not have

a long-term relationship which would give rise to duty to advise.

Next, Phelan did not have broad discretion with respect to Rex's needs.  Phelan

Ans. Interrog. at 9.  Phelan was given a copy of Rex's current policy to review and Rex

requested similar coverage along with underinsured motorist coverage to match that

which was carried by his competitors. Phelan did not analyze Rex's needs.  Further, it was

Rex's former agent at Gibson, Mike Miley, who reviewed the Phelan quote and counseled

Rex that he should accept Phelan's offer.  Rex Dep. at 31:12-18; 12:15-23.  In the end,

Rex made the decision as to the amount of coverage to obtain and from whom.

Therefore, Phelan did not exercise broad discretion with regard to Rex's insurance

coverage.

Finally, there is nothing in the record to support Plaintiffs' contention that Phelan

held itself out to be an experts in the field.  Phelan Ans. Interrog. at 9.  The

uncontroverted evidence is that Rex paid no compensation above the customary premium

paid.  Phelan received only the standard commission for procuring this policy.  Rex Dep.

at 34:14-20; Phelan Ans. Interrog. at 8.  Rex did not pay for, nor did he receive, expert

advice.  Therefore, this Court finds that no special relationship existed between Rex and

Phelan and that there was no duty to advise.  In the absence of such duty, there could not

19

possibly have been a breach of the duty to advise.

## V.  Conclusion

Based on the foregoing, these Defendants are entitled to summary judgment against these Plaintiffs.  Therefore, Defendant Phelan's Rule 56 Motion to Strike Appendix, Exhibit "G" (Docket No. 60) is **GRANTED**.  Defendants Truck and Alan Davis's  Motion for Summary Judgment (Docket No. 45) and Defendant Phelan's First Motion for Summary Judgment (Docket No. 50) are also **GRANTED**.  Each party will bear its own costs.

**IT IS SO ORDERED**.

**DATED: May  9  , 2006**


                              S/ ALLEN SHARP
**ALLEN SHARP, JUDGE**
**UNITED STATES DISTRICT COURT**